UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

L.R., Individually and on Behalf of and as Parent
of L.R., a student with a disability,                                       **COMPLAINT**

                                  Plaintiff,           Civil Action No.

      -against-

NEW YORK CITY DEPARTMENT           ECF Case
OF EDUCATION,

                               Defendant.
-------------------------------------------------------------- X

## PRELIMINARY STATEMENT

1. This action is authorized by the Individuals with Disabilities Education Improvement Act

of 2004 ("IDEA"), 20 U.S.C. § 1415(i)(2)(A), to review a final administrative decision of the

New York State Review Officer ("SRO") regarding the provision of a free appropriate public

education ("FAPE") to L.R., a student with a disability.

2. Plaintiff L.R. (or "Mr. R.") seeks an order vacating and reversing the SRO's November 25,

2014 decision, which denied his claim for tuition funding for his son L.R.'s placement at the

Cooke Center for Learning and Development ("Cooke"), a private, not-for-profit school for

students with disabilities, for the 2011-2012 school year.

3. This action is timely commenced within four months after the date of the SRO's decision

pursuant to 20 U.S.C. § 1415(i)(2)(B) and New York Education Law § 4404(3)(a).

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action under the IDEA, 20 U.S.C. §

1415(i)(2)(A), and 28 U.S.C. §§ 1331 and 1343.

5. The Court has supplemental jurisdiction to adjudicate state claims arising out of the same

facts as the asserted federal claims. 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as the judicial district in which a substantial part of the events giving rise to the claim occurred.

## PARTIES

7. Mr. R. is the father of L.R.

8. L.R. was born in 1990 and is currently 24 years old.

9. During the 2011-2012 school year, L.R. was ages 20 and 21 and in his last year of eligibility for educational services under the IDEA. 20 U.S.C. § 1412(a)(1)(A) (a state must ensure that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive"); 8 N.Y.C.R.R. § 200.5(a)(5)(iii) (a "student continues to be eligible for a free appropriate public education until the end of the school year in which the student turns age 21 or until the receipt of a Regents or local high school diploma").

10. L.R. is identified by his initials in the caption of this action and throughout the Complaint consistent with the spirit of Federal Rule of Civil Procedure 5.2(a).[1]

11. Mr. R. and L.R. reside together in Brooklyn, New York.

---

[1] While L.R. is not a minor, this Complaint refers to him and his father, Mr. R., by their initials because the administrative record in this matter contains sensitive social, medical, and psychological information about L.R. as a minor. *See P.M. v. Evans-Brant Cent. Sch. Dist.*, No. 08-CV-168A, 2008 WL 4379490, at *3 (W.D.N.Y. Sept. 22, 2008) (allowing a parent and child to be identified by their initials only and recognizing that in actions brought pursuant to the IDEA "the information contained within the administrative record for such a claim will almost certainly contain social, medical and psychological information about the minor child. The sensitivity of such information is recognized by 20 U.S.C. § 1417(c), which requires state and local educational agencies to ensure the confidentiality of any personally identifiable data, information, and records collected or maintained by such agencies"); *see also K.H. v. New York City Dep't of Educ.*, No. 12-CV-1680(ARR)(MDG), 2014 WL 3866430, at *1 n.1 (E.D.N.Y. Aug. 6, 2014) (using initials to identify to a 25 year-old plaintiff who brought action under the IDEA alleging that he had been denied a FAPE while attending the DOE's schools).

12. Defendant New York City Department of Education ("DOE") is a municipal corporation that operates in all five boroughs of New York City.

13. The DOE is responsible under the IDEA and the New York State Education Law for providing a FAPE to New York City residents between the ages of three and 21 who have been classified as students with disabilities in need of special education services and who have not yet received a regular high school diploma.

## LEGAL FRAMEWORK

14. In enacting the IDEA, Congress created a comprehensive statutory framework for "ensur[ing] that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(l)(A).

15. States receiving federal financial assistance under the IDEA must adhere to the Act's procedural and substantive requirements and must ensure that all children with disabilities are afforded a FAPE. 20 U.S.C. § 1412(a).

16. In order to satisfy the requirements of the IDEA, a school district must provide each disabled child with "special education and related services," 20 U.S.C. § 1401(9), that are "reasonably calculated to enable the child to receive educational benefits." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982).

17. School districts must have an Individualized Education Program ("IEP") in place for each student with a disability at the beginning of each school year and must review that IEP not less than annually. 20 U.S.C. §§ 1414(d)(2)(A), (d)(4)(A)(i).

3

18. The IDEA further mandates that school districts reevaluate each student with a disability at least once every three years, unless the parent and the school district agree otherwise. 20 U.S.C. § 1414(a)(2)(B)(ii); *see also* 8 N.Y.C.R.R. § 200.4(b)(4) ("A committee on special education shall arrange for an appropriate reevaluation . . . at least once every three years, except where the school district and the parent agree in writing that such reevaluation is unnecessary").

19. Evaluations must be "sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified." 34 C.F.R. § 300.304(c)(6). School districts must assess students "in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities." 34 C.F.R.§ 300.304(c)(4).

20. In addition to having an IEP in place at the beginning of a child's school year, a school district must also provide the child with a placement at a school capable of implementing the child's IEP and providing the student with an appropriate education. *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009) (stating that school districts do not have "carte blanche to assign a child to a school that cannot satisfy the IEP's requirements").

**DUE PROCESS PROCEDURES**

21. The IDEA provides "procedural safeguards that enable parents and students to challenge the local educational agency's decisions," *Murphy v. Arlington Cent. Sch. Dist.*, 297 F.3d 195, 197 (2d Cir. 2002) (citing 20 U.S.C. § 1415), including the right to file a due process complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6)(A).

22. In New York, IDEA due process complaints must be initially litigated in a hearing conducted at the school district level before an impartial hearing officer ("IHO"). N.Y. Educ. L. § 4404(1); 8 N.Y.C.R.R. §§ 200.5(i)-(j).

23. New York State law places the burden of proof in impartial hearings on school districts, "including the burden of persuasion and burden of production," "except that a parent or person in parental relation seeking tuition reimbursement for a unilateral parental placement shall have the burden of persuasion and burden of production on the appropriateness of such placement." N.Y. Educ. L. § 4404(1)(c).

24. "In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies – (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii)(I-III). Subject to this provision, the decision of an IHO "shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education." 20 U.S.C. § 1415(f)(3)(E)(i).

25. The IDEA generally bars the party requesting the due process hearing from raising issues at the hearing that were not set forth in the due process complaint. 20 U.S.C. § 1415(f)(3)(B). However, the IDEA's "waiver rule is not to be mechanically applied" as long as the complaining party provides "fair notice." *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 78 (2d Cir. 2014).

26. Furthermore, if at the hearing a defending party raises an issue that was beyond the scope of the due process complaint, the defending party has "opened the door" and an IHO may

5

address the issue. *See M.H. v. New York City Dept. of Educ.*, 685 F.3d 217, 250-51 (2d Cir. 2012) ("it does not follow from the fact that the DOE bears the burden of demonstrating that the IEP provides a FAPE that it should be permitted to argue issues outside the scope of the due process complaint without 'opening the door' for the plaintiffs"); *P.G. v. New York City Dep't of Educ.*, 959 F.Supp.2d 499, 515 (S.D.N.Y. 2013) (where "the DOE lawyer ... raised the 12:1:1 class in her opening statement and elicited testimony on direct examination that the IEP was appropriate in part because it proscribed a 12:1:1 placement ... the door was opened for Plaintiffs to object to the propriety of a 12:1:1 placement"); *Y.S. v. New York City Dep't of Educ.*, No. 12-CV-2590(WHP), 2013 WL 5722793, at *6 (S.D.N.Y. Sept. 24, 2013) (concluding that the "DOE 'opened the door' to [a] challenge to the [IEP's] teaching methodology" where the DOE was "first to raise the issue of methodology when it examined [the child's] proposed teacher under the IEP" and the DOE "elicited [the teacher's] 'express or implied opinion' that the use of particular methodologies made the program appropriate for [the child]").

27. The decisions reached in impartial hearings are subject to administrative appeals to the SRO. 34 C.F.R. § 300.514(b); N.Y. Educ. L. § 4404(2); 8 N.Y.C.R.R. § 200.5(k).

28. Those portions of an IHO's decision not appealed by either party are final and binding, and may not be reviewed by the SRO. 34 C.F.R. § 300.514(a); 8 N.Y.C.R.R. § 200.5(j)(5)(v).

29. Once administrative remedies have been exhausted, either party may seek independent judicial review of the SRO's decision in the state or federal courts. 20 U.S.C. § 1415(i)(2)(A).

30. In an appeal to the federal district court under 20 U.S.C. § 1415(i)(2)(A), the court receives the record of the administrative proceedings and may accept additional evidence at the request of either party. 20 U.S.C. § 1415(i)(2)(C).

31. "[T]he district court must engage in an independent review of the administrative record

and make a determination based on a 'preponderance of the evidence,'" giving "due weight" to the administrative proceedings. *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112-13 (2d Cir. 2007).

32. The court does not accord "due weight" when there are no administrative findings on an issue. *Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*, 550 F.Supp.2d 420, 432 (S.D.N.Y. 2008). Nor does a court accord "due weight" to administrative proceedings when determining questions of law. *Lillbask ex rel. Mauclaire v. Connecticut Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005); *see also E.M. ex rel. N.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 456-57 (2d Cir. 2014) ("we need not defer to the findings of state administrative officers on questions, such as contract interpretation or the requirements of standing, that fall outside of their field of expertise"); *M.H.*, 685 F.3d at 244 (observing that the weight due to administrative determinations "will vary based on the type of determination at issue").

33. Generally, a reviewing court's "analysis will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example, whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." *M.H.*, 685 F.3d at 244. "Determinations grounded in thorough and logical reasoning should be provided more deference than decisions that are not." *Id.* Additionally, where the administrative findings of the IHO and the SRO disagree and "where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court ... to consider the IHO's analysis, which is also informed by greater educational expertise than that of judges, rather than to rely exclusively on its own less informed educational judgment." *Id.* at 246.

7

34. A reviewing court should also "defer to an IHO's analysis when considering an issue not reached by the SRO." *C.F. ex rel. R.F.*, 746 F.3d at 82 (2d Cir. 2014).

## TUITION PAYMENT REMEDY

35. The IDEA grants courts broad discretion to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).

36. In *Burlington v. Department of Education*, 471 U.S. 359 (1985), the Supreme Court interpreted this statutory provision to "confer[] broad discretion on the court" to grant relief that is "'appropriate' in light of the purpose of the Act," *id.* at 369, including an award of tuition reimbursement to parents where (1) the services offered by the school district are inadequate or inappropriate; (2) the private school selected by the parents is an appropriate placement for the student; and (3) equitable considerations support the parent's claim (the three "*Burlington* prongs"), *id.* at 369-70, 374; *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12, 16 (1993).

37. The 1997 and 2004 reauthorizations of the IDEA include a tuition reimbursement provision stating: "If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)(ii); IDEA Amendments of 1997, Pub. L. No. 105-17, 111 Stat. 37, 63 (1997).

## DIRECT TUITION PAYMENT

38. The Second Circuit Court of Appeals has held that payment of the tuition directly to a private school is appropriate where a school is willing to admit the child of a low-income parent while the parent pursues her due process remedies under the IDEA. *E.M. ex rel. N.M.*, 758 F.3d at 453-54 ("Indeed, where the equities call for it, direct payment fits comfortably within the *Burlington-Carter* framework: like reimbursement, direct payment to the private school . . . 'merely requires [the school district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP'" (quoting *Burlington*, 471 U.S. at 370–71)); *see also A.R. ex rel. F.P. v. New York City Dep't of Educ.*, No. 12-CV-4493(PAC), 2013 WL 5312537, at *8 (S.D.N.Y. Sept. 23, 2013) ("it would be a grave error to conclude from the fact that Plaintiff did not have the means to pay for a private placement that her daughter is precluded from receiving the *free* appropriate public education that the IDEA is intended to guarantee" (emphasis in original)).

## FACTS

39. L.R. was first referred for special education services in the second grade when he started having trouble understanding his school work and failing tests.

40. At that time, L.R. was hyperactive and had trouble focusing.

41. At age nine, L.R. was diagnosed with Attention Deficient Hyperactivity Disorder.

42. The DOE categorized L.R. as a student with a learning disability.

43. L.R. first enrolled at Cooke in September 2006, attending the Cooke Center Academy, Cooke's program for students ages 14 to 21.

44. The DOE agreed to fund L.R.'s tuition at Cooke for the five school years prior to the 2011-2012 school year.

**The 2009 Triennial Reevaluation**

45. In January 2009 Mr. R. requested the DOE perform a complete reevaluation for L.R., as it had been six years since the DOE had last conducted evaluations of L.R.

46. The DOE conducted a triennial reevaluation of L.R. in the fall of 2009, which was comprised of a November 22, 2009 psychoeducational evaluation and a December 2, 2009 social history evaluation.

47. The psychoeducational evaluation indicated that L.R. had a full-scale IQ score of 74, "in the borderline impaired range."

48. An assessment of L.R.'s non-verbal and verbal abilities revealed that he had "significant perceptive and expressive language difficulties" that affected his ability to learn as he did "not fully understand what was being requested of him."

49. The social history evaluation indicated that L.R. was receiving speech therapy and it reported that Mr. R. stated "that to help him learn [L.R.] needs things repeated or he needs to see it done."

50. The DOE did not conduct a speech and language evaluation to more fully illustrate L.R.'s difficulties understanding language and expressing himself.

**L.R.'s Enrollment in Cooke's SKILLs Program**

51. In September 2009, L.R. enrolled at Cooke's Skills and Knowledge for Independent Living & Learning ("SKILLs") program – a program for 18 to 21 year old students with mild to moderate cognitive and developmental delays as well as students with severe language based disabilities.

52. The SKILLs program is designed to develop students' foundational knowledge and skills for independence at home and integration into the community.

53. The classes in the SKILLs program contain, at most, 12 students.

54. L.R. was enrolled in the SKILLs program for the 2009-2010, 2010-2011, and 2011-2012 school years.

### The June 6, 2011 CSE Meeting and L.R.'s IEP for the 2011-2012 School Year

55. On June 6, 2011, the DOE convened a Committee on Special Education ("CSE") meeting to prepare L.R.'s IEP for the 2011-2012 school year.

56. L.R. was to be ages 20 and 21 during the course of the 2011-2012 school year, which was the last year in which he was eligible for services under the IDEA.

57. The following individuals participated in the June 2011 CSE meeting: Jacqueline Giurato, the district representative and a special education teacher assigned to CSE Region 9; Nancy Levine, a DOE school psychologist; Gloria Gonsalves, a parent member of CSE Region 9; Mr. R.; Cooke educator Sally Ord; Kate Hibbard, L.R.'s literacy and math teacher at Cooke; and Victoria Fowler, the Cooke SKILLs program coordinator.

58. The following documents were available at the June 2011 CSE meeting: a Spring 2011 Cooke progress report, L.R.'s IEP from the prior 2010-2011 school year, the December 2009 social history evaluation, and the November 2009 psychoeducational evaluation.

59. The DOE recommended that L.R. be placed in a special class with a 15:1 student-to-teacher ratio in a community school for English, math, science, social studies, and foreign language.

60. Both Mr. R. and a Cooke educator objected to the 15:1 program recommendation, stating that L.R. needed a smaller staffing ratio, but the DOE declined to recommend a more supportive setting.

11

61. The formulated IEP contained little specific information on L.R.'s speech and language deficits and impairments, and presented no cogent plan for enabling L.R. to learn despite his profound struggles with receptive and expressive language.

62. While the IEP's "diploma objective" was for L.R. to earn an "IEP Diploma," the IEP also recommended that L.R. participate in both State and local assessments – the Regents Examinations or the Regents Competency Tests ("RCTs").

63. This recommendation was made based on a DOE "rule of thumb" that all students who are reading at or above a third grade level will take the Regents Examinations or the RCTs.

64. To earn a Regents high school diploma in New York State, a student must pass the Regents Examinations in English, mathematics, science, United States history and government, and global history and geography. 8 N.Y.C.R.R. § 100.5(a)(5).

65. In New York State, students with disabilities may earn a "local" high school diploma if, after failing each Regents Examination required for graduation at least once, they take and pass the RCTs. Memorandum from James P. DeLorenzo, Assistant Commissioner of the New York State Education Department, to District Superintendents, et al. (July 2006) (available at www.p12.nysed.gov/specialed/publications/policy/55-64pass.htm (last visited March 23, 2015)).

66. Prior to July 1, 2013, without passing the Regents Examinations or the RCTs a student with disability in New York State could earn an "IEP diploma," which is a diploma "intended for a student with the most significant disabilities in recognition of his or her successful achievement of individual educational goals," but which "is often not accepted by employers, the military" and other post high-school programs "because it is not based on standardized criteria." Memorandum from James P. DeLorenzo, Assistant Commissioner of the New York State

12

Education Department, to District Superintendents, et al. (April 2010) (available at www.p12.nysed.gov/specialed/publications/iepdiploma.htm (last visited March 23, 2015)).

67. In June 2011, L.R. was independently reading at third grade level. He had never taken a Regents Examination and had only taken one RCT, which he did not come close to passing.

**The DOE's Recommended Placement School, Clara Barton**

68. By a notice dated July 11, 2011, the DOE identified H600, Clara Barton High School ("Clara Barton"), located at 901 Classon Avenue, Brooklyn, New York 11225, as L.R.'s placement school for the 2011-2012 school year.

69. In July 2011, Mr. R. called Clara Barton to arrange a school visit, but was told that the summer program was not the same as the academic year program in which L.R. was placed and that he should visit in September to properly evaluated the program.

70. On September 13, 2011, Mr. R. and Cooke educator Ms. Ord visited Clara Barton and met with a Clara Barton special education teacher.

71. The special education teacher confirmed that under the June 2011 IEP L.R. would have to take the RCTs if he attended Clara Barton.

72. The special education teacher told Mr. R. that he thought Clara Barton was not for L.R. and that Mr. R should go back to the DOE office that issued placement recommendations.

73. Through counsel, Mr. R. wrote to the DOE on September 14, 2011 to report that he had learned that Clara Barton was not appropriate for L.R.

**L.R.'s Enrollment and Educational Program at Cooke for the 2011-2012 School Year**

74. Mr. R. signed an enrollment contract for the 2011-2012 school year with Cooke on March 18, 2011.

75. The enrollment contract afforded Mr. R. the flexibility to continue working with the DOE to identify a public school placement for L.R. and to withdraw L.R. from Cooke without financial penalty if the DOE offered L.R. an appropriate placement by October 31, 2011.

76. The enrollment contract provided that L.R.'s tuition at Cooke was $48,500.00 for the 2011-2012 school year and that Mr. R. was responsible for payment of the tuition.

77. During the 2011-2012 school year in Cooke's SKILLS program, L.R. was placed in a classroom with at most a 10:1 student-to-teacher ratio. On Mondays and Fridays, the classroom had an 8:1 or 7:1 student-to-teacher ratio. On Wednesdays the student-to-teacher ratio was 3:1.

78. This small class setting provided L.R. with a significant amount of one-on-one academic instruction.

79. L.R.'s classes contained only students aged 18 to 21 who had similar cognitive and academic functioning.

80. L.R. received speech and language therapy, occupational therapy, as well as individual counseling and group counseling at Cooke.

81. Cooke placed L.R. in an internship at a food services company, as he was interested in becoming a cook.

82. L.R. also took transition skills classes that taught interview and job search skills, and – along with Mr. R – he met with a Cooke social worker to prepare a transition plan that included registering for continued vocational and educational services.

83. L.R. made academic, social, and emotional progress at Cooke during the 2011-2012 school year.

**The Impartial Hearing**

84. Mr. R., through counsel, filed a due process complaint on April 23, 2012.

14

85. The due process complaint alleged that the DOE denied L.R. a FAPE for the 2011-2012 school year because the DOE failed to adequately evaluate L.R., failed to prepare an appropriate IEP, and failed to offer a placement school that could appropriately educate L.R.

86. The due process complaint requested an order directing the DOE to issue direct payment to Cooke for L.R.'s $48,500.00 tuition for the 2011-2012 school year.

87. The case was assigned to IHO Sharyn Finkelstein, who presided at an impartial hearing on June 6 and June 28, 2012.

88. The DOE presented two witnesses: Ms. Giurato, the district representative at the June 2011 CSE meeting; and Vera Leykina, an assistant principal at Clara Barton.

89. In response to the DOE attorney's questioning on direct examination, Ms. Giurato explained that the DOE recommended that L.R. take the Regents Examinations and the RCTs because he was reading at or above a third grade level. Later, Ms. Giurato explained that the DOE had a "rule of thumb" that all students who are reading at or above a third grade level will take the Regents Examinations or the RCTs.

90. Ms. Giurato testified that a student had to be reading at a sixth grade level to pass the RCTs.

91. Mr. R. testified and presented two witnesses: Ms. Fowler, the administrative coordinator of Cooke's SKILLs program, and Ms. Hibbard, L.R.'s literacy and math teacher at Cooke during the 2010-2011 and 2011-2012 school years.

92. In addition to testifying about Cooke's program for L.R., both Ms. Fowler and Ms. Hibbard testified that L.R. had only taken one RCT, which was extremely stressful for him and which he was unable to finish or pass.

93. Ms. Fowler testified that a class that was focused on RCT preparation would not allow L.R. to make progress because his reading level (third grade) was too far below the level necessary to pass the RCTs.

94. Both Ms. Fowler and Ms. Hibbard stated that L.R. would not be able to make progress in a 15:1 program because he needed more support and teacher guidance than a 15:1 setting provided.

**The IHO's Findings of Fact and Decision**

95. IHO Finkelstein issued her Findings of Fact and Decision ("FFD") on August 14, 2012.

96. On *Burlington* Prong I, IHO Finkelstein determined that there was no evidence to support the DOE's recommendation that L.R. be placed in a 15:1 program or any basis for why the DOE "felt [L.R.] was ready to learn in a larger environment" than the 12 student classes he had been in at Cooke.

97. The IHO also found that the June 2011 IEP's requirement that L.R. take the Regents Examinations and the RCTs was inappropriate and that there was no evidence the DOE "considered [L.R.'s] individual needs or capabilities in determining if he should participate in assessments."

98. The IHO found that while "the absence of a new formal speech and language evaluation in this case did not render the IEP inadequate," the IEP itself "was substantively inappropriate and the recommended placement was inappropriate."

99. On *Burlington* Prong II, the IHO determined that Mr. R. had shown that Cooke was an appropriate placement for L.R.

100. On *Burlington* Prong III, the IHO found that the equities weighed in favor of Mr. R. and, therefore, the IHO ordered the DOE to pay L.R.'s 2011-2012 school year tuition to Cooke "upon proof of contract and attendance."

**The DOE's Administrative Appeal**

101. By a September 5, 2012 Verified Petition, the DOE appealed the FFD to the SRO.

102. The DOE asserted that the IHO erred in her findings on *Burlington* Prongs I and III and asked the SRO to annul the award of direct tuition payment to Cooke.

103. In asserting that the IHO erred on *Burlington* Prong I, the DOE argued that the IHO's finding that Clara Barton was not appropriate for L.R. because the school's classes were geared toward preparation for the Regents Examinations and the RCTs was beyond the scope of the due process complaint and should not have been considered.

104. The DOE did not appeal the IHO's *Burlington* Prong II finding that Cooke was an appropriate placement for L.R.

105. By a Verified Answer and Cross Appeal, dated October 9, 2012, Mr. R. answered the DOE's Verified Petition, asking the SRO to uphold the FFD and dismiss the DOE's appeal.

106. Mr. R also cross-appealed the FFD's finding that the DOE's failure to conduct a speech and language evaluation of L.R. did not result in a FAPE denial.

107. The DOE filed a Verified Answer to the Cross-Appeal on October 26, 2012.

**The SRO's November 25, 2014 Decision**

108. In decision number 12-178, dated November 25, 2014, SRO Carol H. Hauge sustained the DOE's appeal and dismissed Mr. R.'s cross-appeal.

109. Pursuant to the federal regulations implementing the IDEA, the SRO was required to issue a decision in the DOE's appeal "not later than 30 days" after the receipt of the request for

review. 34 C.F.R. § 300.515(b)(1). In flagrant violation of this mandate, the SRO did not issue a

decision for nearly two years after the appeal was fully submitted and over 27 months after IHO

Finkelstein granted Mr. R.'s claim for tuition payment.

110. The SRO first determined that the IHO exceeded the scope of her jurisdiction in making

findings on "whether the June 2011 CSE's recommendation for the student to participate in State

and local assessments was appropriate, whether an 'IEP diploma' was an 'unrealistic objective'

for the student, and whether the assigned public school site was appropriate because classes were

'geared towards passing a Regents examination.'"

111. The SRO did not address the fact that the DOE did not argue in its Verified Petition that

the IHO should not have addressed "the June 2011 CSE's recommendation" for L.R. to take the

Regents Examinations and the RCTs, as its argument was limited to an assertion that the IHO's

findings regarding Clara Barton were impermissibly.

112. The SRO did not recognize that the DOE had expressly argued in its closing statement

to the IHO that its June 2011 IEP was appropriate for L.R. because "the IEP directed that the

Student would participate in New York State and local assessments with significant

accommodations."

113. The SRO did not support its determination that the IHO exceeded the scope of her

jurisdiction with any analysis of the hearing record.

114. In a footnote, and without any analysis of the hearing record, the SRO made an

alternative finding that it was appropriate for the DOE to recommend that L.R. take the Regents

Examinations and the RCTs because the SRO apparently believed that L.R. was not eligible to

take any alternative assessments.

115. The SRO also determined on *Burlington* Prong I that while the DOE's failure to conduct an updated speech and language evaluation was a procedural violation it did not result in a denial of FAPE.

116. In making this determination, the SRO relied on the speculative testimony of Ms. Giurato that the DOE did not need to perform a speech and language evaluation in making educational recommendations "because the student would be evaluated when he began receiving speech-language therapy during the 2011-12 school year."

117. The SRO inconsistently determined that its review of the record "revealed that that CSE reviewed and updated the speech and language annual goals" and that "the June 2011 CSE copied two speech-language annual goals in the May 2010 IEP – verbatim – into the June 2011 IEP."

118. The SRO also determined that the evidence in the record supported the DOE's recommendation that L.R. be placed in a 15:1 program.

119. In determining that a 15:1 program was appropriate for L.R., the SRO did not mention or analyze the testimony from Mr. R and the Cooke educators that a 15:1: program was not appropriate for L.R.

120. With regard to the DOE's placement school, Clara Barton, the SRO first determined that any "arguments asserted by the parent ... are speculative."

121. The SRO then made an alternative determination that "the evidence in the hearing record does not support the conclusion that the district would have violated the FAPE legal standard related to the IEP implementation" at Clara Barton.

122. The SRO did not support its alternative determination that L.R. placement at Clara Barton did not result in a denial of a FAPE with any citations to or analysis of the record.

123. The SRO made no findings with respect to *Burlington* Prong III.

## FIRST CAUSE OF ACTION

124. The SRO erred in determining that the IHO's findings regarding L.R.'s participation in the Regents Examinations and RCTs exceeded the scope of the IHO's jurisdiction.

125. The DOE raised the issue of L.R.'s participation in Regents Examinations and RCTs in presenting its case on *Burlington* Prong I at the impartial hearing. The DOE also asserted in its brief to the IHO that the program recommended in the June 2011 IEP was appropriate for L.R. because the IEP required L.R. to "participate in New York State and local assessments."

126. Therefore, it was proper for Mr. R. to respond to this issue and for the IHO to adjudicate this issue. *See M.H.*, 685 F.3d at 250-51 ("[I]t does not follow from the fact that the DOE bears the burden of demonstrating that the IEP provides a FAPE that it should be permitted to argue issues outside the scope of the due process complaint without 'opening the door' for the plaintiff").

127. A student needs to be able to read at a sixth grade level to pass the RCTs, and in June 2011 L.R. was reading independently at a third grade level. L.R. had never taken a Regents Examination and had not come close to passing the one RCT that he had taken.

128. The DOE's recommendation that L.R. be required to take the Regents Examinations and the RCTs was inappropriate and rendered the June 2011 IEP substantively deficient.

## SECOND CAUSE OF ACTION

129. The SRO erred in determining that the DOE's 15:1 program recommendation was appropriate for L.R.

130. Under New York State law, N.Y. Educ. L. § 4404(1)(c), the DOE bore the burden of proving its 15:1 program recommendation was appropriate for L.R., and it failed to present evidence that met this burden.

131. The DOE failed to present any evidence that indicates that L.R. would be able to make progress in a 15:1 program.

132. The record indicates that L.R. had significant perceptive and expressive language difficulties that resulted in profound learning difficulties as he often did not fully understand what was being requested of him, yet the SRO pointed to no evidence that indicates that a 15:1 program would allow L.R. to make progress given his speech and language impairments.

133. All the Cooke educators who participated in the June 2011 CSE meeting, and all the educators who testified at the impartial hearing who actually knew and worked with L.R., stated that he would not be able to make progress in a 15:1 class setting, yet the SRO failed to assess any of this evidence in determining that the DOE's 15:1 program recommendation was appropriate.

### THIRD CAUSE OF ACTION

134. The SRO erred in finding that the DOE's failure to conduct a speech and language evaluation did not result in a denial of a FAPE to L.R.

135. The SRO's determination was internally inconsistent as the SRO determined that "the parent correctly argues that the June 2011 CSE should have conducted an updated speech-language evaluation," yet also found that the DOE's procedural violation did not result in a denial of a FAPE because "CSE had sufficient evaluative information available to determine the student's speech-language needs."

136. The DOE failed to develop sufficient evaluative information on L.R.'s speech and language impairments, resulting in an IEP that presented no specific plan for allowing L.R. to progress despite his speech and language impairments, and which recommended an inappropriate 15:1 program.

137. The DOE failed to meet its burden of proving that its failure to comply with the IDEA's triennial reevaluation requirements did not result in a denial of FAPE.

## FOURTH CAUSE OF ACTION

138. The SRO erred in failing to determine that equitable considerations favored Mr. R.'s claim for tuition funding for the 2011-2012 school year.

## FIFTH CAUSE OF ACTION

139. The SRO erred in failing to award direct payment of L.R.'s 2011-2012 school year tuition at Cooke. A tuition award was appropriate in this case because all three *Burlington* prongs were satisfied:

  a.   The DOE failed to offer L.R. a FAPE for the 2011-2012 school year;

  b.   The IHO's finding on the second *Burlington* prong – that Cooke was an
       appropriate placement for L.R. for the 2011-2012 school year – is final and
       binding, as the DOE did not appeal that finding to the SRO;

  c.   The IHO's finding on *Burlington* Prong III – that the equities favored Mr. R.'s
       tuition claim – is correct and supported by the record.

140. An award of direct tuition payment was appropriate, because Mr. R. demonstrated that he was legally responsible for the Cooke tuition but lacked the financial means to pay the tuition in advance and seek reimbursement.

## SIXTH CAUSE OF ACTION

141. The SRO's decision was affected by errors of law, was not supported by the evidence of record, and was not thorough and careful. The SRO's decision should not be accorded deference by this Court, and should be reversed.

## RELIEF REQUESTED

WHEREFORE, Mr. R. respectfully requests that this Court:

1. Assume jurisdiction over this action;

2. Conduct an independent review of the administrative record and any additional evidence;

3. Vacate the SRO decision and enter a judgment finding that:

   a. The DOE failed to offer L.R. a FAPE for the 2011-2012 school year;

   b. Cooke was an appropriate placement for L.R. for the 2011-2012 school year; and

   c. equitable considerations support an award of direct tuition funding for L.R.'s placement at Cooke;

4. Issue an order directing the DOE to make direct payment to Cooke for L.R.'s tuition for the 2011-2012 school year in the amount of $48,500.00;

5. Award Mr. R. reasonable attorney's fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I); and

6. Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      March 24, 2015

THOMAS GRAY
PARTNERSHIP FOR CHILDREN'S RIGHTS
Attorney for Plaintiff
271 Madison A venue, 17th Floor
New York, NY 10016
(212) 683-7999 ext. 246
Fax: (212) 683-5544
tgray@pfcr.org

JANICE PAI MARTINDALE
PARTNERSHIP FOR CHILDREN'S RIGHTS
Legal Intern