UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
L.R., Individually and on Behalf of and as Parent
of L.R., a student with a disability,

                     Plaintiff,                  Docket No.
                                         15-CV-1542 (FB) (RML)

         - against -

NEW YORK CITY DEPARTMENT                  ECF Case
OF EDUCATION,

                    Defendant.
-------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION AND REPLY TO DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

THOMAS GRAY
PARTNERSHIP FOR CHILDREN'S RIGHTS
Attorney for Plaintiff
271 Madison Avenue, 17th Floor
New York, New York 10016
(212) 683-7999 ext. 246
tgray@pfcr.org

August 14, 2015

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT                                           1

ARGUMENT                                                       1

POINT I: DEFENDANT'S MEMORANDUM INCORRECTLY
STATES THAT THE DOE ADHERED TO THE IDEA'S
PROCEDURAL REQUIREMENTS IN DEVELOPING
THE JUNE 6, 2011 IEP AND ERRANTLY ASSERTS THAT
THE IEP SHOULD BE PRESUMED TO BE SUBSTANTIVELY
APPROPRIATE                                                    2

POINT II: THE IHO CORRECTLY CONSIDERED THE
JUNE 2011 IEP'S ASSESSMENT RECOMMENDATIONS IN
DETERMINING THAT THE DOE FAILED TO PROVIDE L.R.
WITH A FAPE                                                    5

A.  It Was Appropriate for the IHO to Consider the June 2011 IEP's
    Assessment Recommendations in Determining That the DOE
    Failed to Provide L.R. With a FAPE for the 2011-2012 School Year   5

1)  The DOE Was on Notice of Mr. R.'s Challenge to the
    June 2011 IEP's Assessment Recommendations                 6

2)  The Evidence and Arguments That the DOE Presented at the
    Hearing Opened the Door to the Issue of the June 2011 IEP's
    Assessment Recommendations                                 11

3)  The SRO Should Not Have Found That Considering the
    Appropriateness of the June 2011 IEP's Assessment
    Recommendations Was Beyond the Scope of the
    Impartial Hearing Absent an Argument From the DOE          13

B.  The DOE's Recommendation That L.R. Take the Regents
    and RCTs Demonstrates That It Failed to Consider L.R.'s Unique
    Needs and Provide Him With a FAPE                          15

POINT III: THE DOE'S 15:1 PROGRAM RECOMMENDATION
WAS NOT APPROPRIATE FOR L.R.                                   18

A.  The SRO's Determination That the DOE's 15:1 Program
    Recommendation Was Appropriate for L.R. Is Deficiently Reasoned   19

B.  The DOE's Alternative Justifications for the SRO's Determination
    are Unavailing                                             22

POINT IV: COOKE WAS AN APPROPRIATE
PLACEMENT FOR L.R. AND THE EQUITIES FAVOR
DIRECT TUITION PAYMENT                                        24

CONCLUSION                                                   25

## PRELIMINARY STATEMENT

Plaintiff Mr. R. commenced this action pursuant to the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. § 1415(i)(2)(A), on behalf of and as parent of L.R. to seek reversal of a final administrative decision rendered by the New York State Review Officer ("SRO"). The SRO's decision overturned the decision of an Impartial Hearing Officer ("IHO") and found that Defendant New York City Department of Education ("DOE") offered L.R. a free appropriate public education ("FAPE") for the 2011–2012 school year. The SRO's decision denied Mr. R.'s request for an order directing the DOE to pay L.R.'s 2011-2012 school year tuition at the Cooke Center for Learning and Development ("Cooke"). Plaintiff submits this Memorandum of Law in Opposition and Reply to Defendant's Memorandum of Law in Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment.[1]

## ARGUMENT

As demonstrated in Plaintiff's Memorandum, the IHO correctly weighed all of the evidence in the record against the issues contested at the hearing and properly concluded that the DOE failed to provide L.R. with a FAPE for the 2011-2012 school year (P. Mem. 14-35). Plaintiff's Memorandum also demonstrated that the SRO's contrary determinations were based on misstatements of the facts in the record and misapplications of the law and, therefore, should not be accorded deference from this Court (P. Mem. 14-35). *See M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 241 (2d Cir. 2012) (the "SRO's or IHO's factual findings must be

---

[1] This memorandum is referred to herein as "Defendant's Memorandum" or "D. Mem." Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment is referred to as "Plaintiff's Memorandum" or "P. Mem." Citations to the administrative record are as follows: "Tr." refers to the impartial hearing transcript. "Exh." refers to the exhibits. "FFD" refers to the August 14, 2012 Findings of Fact and Decision of IHO Sharyn Finkelstein. "SRO Dec." refers to the November 25, 2014 decision of SRO Carol H. Hauge.

'reasoned and supported by the record' to warrant deference") (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 114 (2d Cir. 2007)).

Defendant's Memorandum raises no persuasive counter arguments. The DOE generally avoids attempting to justify the specific reasoning that the SRO used to determine that it offered L.R. a FAPE and that the IHO ruled on issues that were beyond the scope of the hearing. Instead, the DOE largely relies on reasoning that is not contained within the SRO's decision in asking this Court to affirm the SRO's determinations. However, as detailed below, neither the SRO's own logic nor the DOE's substitute reasoning support affirming the SRO's reversal of the IHO's order directing the DOE to fund L.R.'s 2011-2012 school year tuition at Cooke.

**POINT I: DEFENDANT'S MEMORANDUM INCORRECTLY STATES THAT THE DOE ADHERED TO THE IDEA'S PROCEDURAL REQUIREMENTS IN DEVELOPING THE JUNE 6, 2011 IEP AND ERRANTLY ASSERTS THAT THE IEP SHOULD BE PRESUMED TO BE SUBSTANTIVELY APPROPRIATE**

Rather than directly addressing the substance of the SRO's decision, Defendant's Memorandum first argues that Mr. R.'s claims before this Court demonstrate that the DOE provided L.R a FAPE for the 2011-2012 school year. The DOE asserts that "L.R.'s IEP was developed in accordance with the IDEA's procedural requirements" and that the "IEP's procedural compliance with the IDEA, which is unchallenged, creates a presumption that the IEP was substantively appropriate" (D. Mem. 10, 12). The DOE's assertions are wrong.

First, the DOE's statement that "L.R.'s IEP was developed in accordance with the IDEA's procedural requirements" is inaccurate. That Mr. R. does not allege that the DOE's procedural violations of the IDEA in developing the June 6, 2011 IEP resulted in a denial of a FAPE to L.R. does not mean that the IEP was "developed in accordance with the IDEA's procedural requirements." Moreover, Mr. R.'s due process complaint alleged that the "DOE failed to .... adequately evaluate [L.R.] before developing an IEP," which resulted in a denial of a

2

FAPE to L.R. (Exh. 1 at 3). Under 20 U.S.C. § 1414(b)(3)(B), the DOE was required to evaluate L.R. "in all areas of suspected disability." That the DOE failed to do so was not disputed at the impartial hearing. Before the IHO, the DOE did not argue that it had procedurally complied with the IDEA, but rather that its procedural error "is not dispositive because there has been no showing that the Student's right to a FAPE" was denied (Exh. 18 at 4). As there was no question that the DOE failed to fully evaluate L.R., the IHO only assessed whether the DOE's procedural error resulted in a denial of a FAPE to L.R. (*see* FFD 9-10) (finding that the DOE's failure to conduct a speech and language evaluation did not impede L.R.'s right to a FAPE or result in a loss of educational benefits)). The SRO explicitly found that "[g]iven the student's speech-language needs and under the circumstances of this case, the parent correctly argues that the June 2011 CSE should have conducted an updated speech-language evaluation of the student and the failure to do so constitutes a procedural violation" (SRO Dec. 14). Thus, this case's specific litigation history contradicts the DOE's assertion that "L.R.'s IEP was developed in accordance with the IDEA's procedural requirements."

Second, the DOE's assertion that an "IEP's procedural compliance with the IDEA [...] creates a presumption that the IEP was substantively appropriate" is a misstatement of the law (D. Mem. 12). The DOE does not point to any language in the IDEA or the case law that supports this assertion (*see* D. Mem. 12). In fact, courts assess a school district's procedural and substantive compliance with the IDEA separately, as part of a two-part test. As the Second Circuit has recently stated, "[t]o decide whether an IEP complies with the IDEA, we follow a two-part test. The first part examines the procedural adequacy of the IEP, asking 'whether the state has complied with the procedures set forth in the IDEA.' [...] The second part of the test examines the substantive adequacy of the IEP by asking whether it was 'reasonably calculated to

enable the child to receive educational benefits.'" *T.M. ex rel. A.M. v. Cornwall Cent. School Dist.*, 752 F.3d 145, 160 (2d Cir. 2014) (internal citations omitted).

Moreover, courts routinely find that a district's IEP to be substantively inadequate for a child regardless of the district's procedural compliance with the IDEA. For example, without assessing any alleged procedural violations, *T.M.* found that a district's proposed extended school year placement violated the IDEA's least restrictive environment requirement, rendering the child's "IEP substantively inadequate." *T.M.*, 752 F.3d at 167. *See also Reyes ex rel. R.P. v. New York City Dep't of Educ.*, 760 F.3d 211, 222 (2d Cir. 2014) (without assessing any alleged procedural violations, finding a FAPE denial where the child "required the services of a 1:1 paraprofessional for longer than the transitional three-month period afforded him by his IEP"); *T.L. ex rel. A.L. v. New York City Dep't. of Educ.*, No. 12-CV-4483, 2014 WL 3889973, at *2 (E.D.N.Y. Aug. 7, 2014) (without considering any alleged procedural errors, finding a child was denied a FAPE where the "challenges posed by the student's PICA" could not be adequately addressed in the DOE's placement school's "facilities and environment").

Likewise, a hearing officer may find that a district's failure to comply with the IDEA's procedural requirements has denied a child a FAPE without inquiring into the substantive adequacy of the IEP. A district's procedural violation of the IDEA denies a child a FAPE when it has "impeded the child's right to a free appropriate public education; significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii). *See, for example, Brock ex rel. S.B. v. New York City Dep't of Educ.*, No. 13-CV-8673, 2015 WL 1516602, at *8 (S.D.N.Y. Mar. 31, 2015) (stating that "there is no need to reach Plaintiffs' challenge as to the substantive adequacy of the IEP,

because this Court has already determined that a procedural violation rising to the level of

denying [the child] a FAPE and depriving her of educational benefits occurred in this case").

    Thus, neither the language of the IDEA nor any case law or other guidance supports the

DOE's assertion that an "IEP's procedural compliance with the IDEA [...] creates a presumption

that the IEP was substantively appropriate" (D. Mem. 12).

### POINT II: THE IHO CORRECTLY CONSIDERED THE JUNE 2011 IEP'S ASSESSMENT RECOMMENDATIONS IN DETERMINING THAT THE DOE FAILED TO PROVIDE L.R. WITH A FAPE

#### A.  It Was Appropriate for the IHO to Consider the June 2011 IEP's Assessment Recommendations in Determining That the DOE Failed to Provide L.R. With a FAPE for the 2011-2012 School Year

    The IHO correctly determined that the DOE's recommendation that L.R. take the Regents

examinations and the Regents Competency Tests ("RCTs") "was not appropriate and

demonstrates a lack of understanding of [L.R.'s] individual needs" (FFD 10). As demonstrated in

Plaintiff's Memorandum, the SRO's finding that "the IHO sua sponte addressed and decided"

this issue is unsupported and should be accorded no deference (P. Mem. 14-21; SRO Dec. 9-11).

*See J.W. and L.W. v. New York City Dep't of Educ.*, No. 13-CV-6905, 2015 WL 1399842, at *7

(S.D.N.Y. Mar. 27, 2015) (noting that courts accord no deference to an SRO's determination that

an issue is waived "as '[d]eterminations about whether arguments are preserved for SRO or

district court review are ... well within the institutional competence of the courts'") (internal

citations omitted)).

    Initially, it should be noted that in arguing that the IHO should not have considered the

June 2011 IEP's assessment recommendations, the DOE does not attempt to defend the specific

logic underlying the SRO's determination that the IHO "sua sponte addressed" this issue (*see* D.

Mem. 20-29). Plaintiff's Memorandum noted that the SRO did not assess whether the DOE was

on "fair notice" that Mr. R. disagreed with L.R.'s placement in a program that focused on

teaching to the Regents and RCTs (P. Mem. 19). *See C.F. ex rel. R.F. v. New York City Dep't of*

*Educ.*, 746 F.3d 68, 78 (2d Cir 2014) ("We hold that the waiver rule is not to be mechanically

applied. The key to the due process procedures is fair notice ..."). Plaintiff's Memorandum also

demonstrated that the SRO's application of the case law regarding when a party has "opened the

door" to an issue was deficient (P. Mem. 19-21). *M.H. v. New York City Dep't of Educ.*, 685 F.3d

217, 250 (2d Cir. 2012) ("it does not follow from the fact that the DOE bears the burden of

demonstrating that the IEP provides a FAPE that it should be permitted to argue issues outside

the scope of the due process complaint without 'opening the door' for the plaintiffs"). The

DOE's offers no defense of the SRO's specific assessment of the facts related to this issue or the

relevant case law that defines the scope of impartial hearings (*see* D. Mem. 20-29). Rather, the

DOE asks this Court to affirm the SRO's determination on alternative grounds. Nevertheless, the

DOE's alternative reasoning is unpersuasive.

### 1) The DOE Was on Notice of Mr. R.'s Challenge to the June 2011 IEP's Assessment Recommendations

As demonstrated in Plaintiff's Memorandum, IHO did not exceed the scope of the

impartial hearing in determining that the DOE's recommendation the L.R. "take both the

Regents and RCT examinations was not appropriate and demonstrates a lack of understanding of

[L.R.'s] individual needs" (P. Mem. 14-21; FFD 10). In response, the DOE asserts that it "had no

way of guessing that" Mr. R. objected to the June 2011 IEP's assessment recommendations (D.

Mem. 23). The DOE writes that it was "sandbag[ed]" when the IHO adjudicated this issue.

However, the DOE's conduct throughout the administrative proceedings belies its assertion that

it did not know that Mr. R. objected to L.R. being placed in classes focused on preparing for the

Regents and RCTs.

Upon calling its first witness at the hearing the DOE's attorney elicited information regarding the IEP's assessment recommendations (Tr. 17-18; *see also* Tr. 22 (the DOE attorney asked Clara Barton Assistant Principal Vera Leykina, "Now if [L.R.] had been placed in any one of these 15:1 classes, would he have been able to take RCT examinations?")). On direct examination, the DOE's attorney specifically asked the DOE district representative at the June 2011 CSE meeting, Jacqueline Giurato, to explain the logic of including a requirement that L.R. take State and local assessments in the IEP (*see* Tr. 76 (the DOE attorney asked, "Can you please explain to the Hearing Officer why the IEP team elected to have the student [L.R.] participate in state and local assessments?")). Furthermore, in cross-examining Mr. R. the DOE's attorney elicited testimony recounting that a Clara Barton teacher told Mr. R. that because L.R. "hasn't taken Regents and the [R]CTs" he "should go back to the Board of Ed" because "this program was [not] for your son" (Tr. 210-11).

As noted in Plaintiff's Memorandum, the DOE's attorney argued in a closing statement to the IHO that the June 2011 IEP was substantively adequate specifically because "the IEP directed that the Student would participate in New York State and local assessments" (P. Mem. 15, citing Exh. 18 at 5). Defendant's Memorandum attempts to downplay this reliance by asserting that the closing statement's argument was made in the context of "[s]upporting the substantive adequacy of the IEP" generally; the DOE writes that the "closing brief contains no acknowledgement that Mr. R. objected to such participation" in State and local assessments (D. Mem. 24-25). However, the assertion is undermined by the fact that the DOE's closing statement to the IHO argued that the DOE provided L.R. with a FAPE specifically because of the IEP's appropriate assessment recommendations. Moreover, the DOE continued to argue before the SRO that the IEP provided L.R. with a FAPE specifically because it "recommended that [L.R.]

7

participate in State and local assessments" (Verified Petition ("Pet.") ¶¶ 39-40). Thus, that the DOE litigated and argued the appropriateness of the IEP's assessment recommendations throughout the administrative proceedings demonstrates that the DOE was on notice of this issue.

Defendant's Memorandum also attempts to rescue the SRO's unsupported finding that the IHO determined issues beyond the scope of the hearing by asserting that Mr. R. transformed a "CCT Class Claim" into an objection to L.R. taking the Regents and RCTs (D. Mem. 21-24). However, Mr. R.'s due process complaint states that classes focused on preparing for the RCTs would not provide L.R. with appropriate instruction. The complaint states that Mr. R. "was informed that because [L.R.'s] IEP indicated an IEP diploma and he was to participate in State and local assessments, he would be placed in RCT classes in order to comply with this mandate" (Exh. 1 at 4). While Mr. R. believed that there classes would be "collaborative team teaching" classes, his overarching concern was that the "RCT Classes" "would not provide L.R. with the support he requires" (Exh. 1 at 4-5).

Similarly, the DOE mischaracterizes Mr. R.'s objection as only having "to do with whether L.R. should sit for certain assessments" (D. Mem. 24). However, Mr. R. objected to L.R. being placed in classes "geared towards" preparing for these assessments which would entail being taught at an academic level "not designed to meet his needs" (Exh. 1 at 5; Tr. 22).

The DOE also notes that Mr. R. initially articulated his objection to the June 2011 IEP's assessment recommendations in the context of how the IEP would be implemented at the DOE's placement school, Clara Barton (D. Mem. 23). However, Mr. R.'s objection to how the IEP would be implemented was based on an inconsistency between the IEP's objective for L.R. to obtain an "IEP Diploma" and the requirement that L.R. take "State and local assessments," which were not required for an IEP diploma (*see* P. Mem. 23 n.3). Moreover, that Mr. R.'s due

process complaint articulated the objection to L.R.'s placement in classes geared toward taking the RCTs "under a section entitled, 'The DOE failed to offer [L.R.] an appropriate school placement'" does not mean that the issue was not fairly identified (D. Mem. 23). *Cf. P.K. ex rel. S.K. v. New York City Dep't of Educ.*, 526 Fed.Appx. 135, 140 n.6 (2d Cir. 2013) (summary order) (finding that although not specifically enumerated, an alleged insufficiency of 1:1 services was "fairly identified" in the "broad language" of the parent's complaint).

The DOE next criticizes Plaintiff Memorandum's reliance on the holding of *C.F.* that the IDEA's "waiver rule is not to be mechanically applied" and asserts that the case does not support finding the DOE to be on notice of Mr. R.'s objection to the IEP's assessment recommendations (D. Mem. 23). *C.F.*, 746 F.3d at 78. However, the DOE's recitation of the holding in *C.F.* is incomplete. The DOE writes that *C.F.* only held that "an objection to the unavailability of the recommended placement site until the start of the school year was encompassed within the due process complaint that stated that a 'specific and identifiable placement was not timely and properly developed and determined at the time of the IEP meeting'" (D. Mem. 23). But *C.F.* also held that the district court erred in foreclosing the parent's argument concerning the school district's recommendation that the child be placed in a classroom with an inappropriate staffing ratio. *C.F.*, 746 F.3d at 78. It was in regard to the staffing ration issue that *C.F.* held that a claim was preserved for review when 1) "both the IHO and SRO reached the issue on the merits, giving us a record for review;" 2) the claim was "at the heart of this dispute" in the case; 3) the parent's complaint contained a general allegation relevant to the specific claim; and 4) the school district was aware that the parent's "the proposed solution" of finding a private placement for the child provided a remedy for the claim. *Id.*, 746 F.3d at 78.

9

Similarly, in this case both the IHO and the SRO addressed the merits of the appropriateness of requiring L.R. to take the Regents and RCTs (*see* FFD 10-11; SRO Dec. 10 n.5). The dispute over the IEP's assessment recommendations goes to the heart of the dispute regarding whether the DOE's recommendations would allow L.R. receive appropriate instruction and support (Exh. 1). The due process complaint contains a more general allegation that the DOE's recommendation for L.R. to be placed in RCT classes was inappropriate (Exh. 1 at 4-5). And, as a remedy, Mr. R.'s complaint kept L.R. in Cooke's program, which the DOE knew to be more supportive and without a focus on preparing for the Regents and RCTs (Exh. 1; Exhs. 9, 12; Tr. 88, 112-13, 140-43).

Moreover, since *C.F.*, a number of courts have assessed waiver claims under its guidance and found, on circumstances similar to those presented in this case, that a school district was on notice of a parent's claim. *See K.R. ex rel. Matthew R. v. New York City Dep't of Educ.*, No. 13-CV-7464, 2015 WL 1808911, at *9 (S.D.N.Y. Apr. 20, 2015) (overturning an SRO's determination that a parent's allegation regarding a child's access to sensory equipment in a placement classroom was waived as the parent's complaint alleged that the "proposed placement was inappropriate because, among other things '[t]he classroom environment is too loud, chaotic and stressful' [...] which directly relates to [the child's] sensory needs"); *H.W. v. New York State Educ. Dep't*, No. 13-CV-3873, 2015 WL 1509509, at *14-15 (E.D.N.Y., Mar. 31, 2015) (overturning an "SRO's finding that the IHO exceeded her jurisdiction in considering the lack of 1:1 staffing support for" a child and holding that "[a]lthough the main focus of Plaintiffs' complaint was on placing [the child] in a 'language-based program,' the clear implication of the reference to [the child's] difficulties even with 1:1 assistance was sufficient to put the District on notice that its failure to continue such staffing was at issue"); *J.W. and L.W.*, 2015 WL 1399842,

at *8 (determining that the "due process complaint's statement that [the child] had 'not made progress in a similar program' gave the Department adequate notice that the type of program recommended by the Department—including the methodology of that program—was at issue").

In a footnote, Defendant's Memorandum quotes language from *M.O. v. New York City Department of the Education*, __3.d__ , 2015 WL 4256024 (2d Cir. July 15, 2015) and writes that because Mr. R.'s objection to L.R.'s placement in RCT classes was initially framed as a challenge to Clara Barton's ability to implement the June 2011 IEP, the claim was improperly pled (D. Mem. 23, n. 8). However, the holding of *M.O.* that a parent's child need not "physically attend a proposed placement school before challenging that school's ability to implement the child's IEP," *M.O.*, 2015 WL 4256024, at *6, is not relevant to Mr. R.'s claim that the June 2011 IEP contained inappropriate assessment recommendations.

### 2) The Evidence and Arguments That the DOE Presented at the Hearing Opened the Door to the Issue of the June 2011 IEP's Assessment Recommendations

As demonstrated in Plaintiff's Memorandum, even assuming that the DOE was not on notice that Mr. R. disagreed with L.R.'s placement in classes geared toward taking the Regents and RCTs, under the holding of *M.H. v. New York City Department of Education*, 685 F.3d 217, 250 (2d Cir. 2012), that a party may not "argue issues outside the scope of the due process complaint without 'opening the door,'" the DOE's conduct at the hearing required the IHO to assess this issue (P. Mem. 17-21).

The DOE's attempt to distinguish the logic of *M.H.* from the facts of this case is unavailing (D. Mem. 26-27). The DOE first asserts that *M.H.* is distinguishable because the school district in that case "raised the contested issue, methodology, in its opening statement and in the questioning of its first witness" (D. Mem. 26). However, the parties did not present opening statements in this case (Tr. 14). And, as demonstrated in Plaintiff's Memorandum and

11

above, like in *M.H.* the DOE's attorney elicited information about the IEP's assessment recommendations upon beginning to present the DOE's case (P. Mem. 17-18). The DOE also asserts that *M.H.* is inapplicable to this case because in *M.H.* the issue was "not part of the DOE's Prong I argument" (D. Mem. 26). But in *M.H.*, as in this case, the DOE opened the door to an issue by using it to justify its recommendations at *Burlington* Prong I. *See M.H.*, 685 F.3d at 250 ("it would be unfair to permit the DOE to argue that its recommended placement for [the child] was appropriate because it offered 'various teaching methods,' and that the parents' placement was inappropriate because it" offered only one teaching method).

In attempting to distinguish *M.H.* from the facts of this case, the DOE also states that "Defendant referenced the appropriateness of the assessment recommendation only once, outside of the course of argument, and without affirmatively attacking Plaintiff's case" (D. Mem. 27). However, as demonstrated in Plaintiff's Memorandum and above, the DOE addressed this issue in examining both its witnesses and Mr. R. (P. Mem. 17-19; Tr. 17-18, 22-23, 76, 210-11). The DOE writes that its questioning of Ms. Leykina only "regarded implementation of the IEP rather than appropriateness" (D. Mem. 27). However, the DOE also presented Ms. Leykina's testimony to "explain or justify what is listed in the written IEP." *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 185 (2d Cir. 2012).

Defendant's Memorandum does not attempt to distinguish the other cases that Plaintiff's Memorandum cited to demonstrate that the DOE "opened the door" to the appropriateness of the IEP's assessment recommendations (D. Mem. 22-29; *see* P. Mem. 17, citing *P.G. v. New York City Dep't of Educ.*, 959 F.Supp.2d 499 (S.D.N.Y. 2013) and *Y.S. v. New York City Dep't of Educ.*, No. 12-CV-2590, 2013 WL 5722793 (S.D.N.Y. Sept. 24, 2013). Nor does the DOE attempt to defend the SRO's reliance on inapplicable case law in assessing this issue (D. Mem.

12

22-29; *see* P. Mem. 21-21, citing SRO Dec. 11 n.6). Rather, the DOE points to two decisions that it asserts are more applicable to this case: *A.M. v. New York City Department of Education*, 964 F.Supp.2d 270 (S.D.N.Y. 2013) and *Scott v. New York City Department of Education*, 6 F.Supp.3d 424 (S.D.N.Y. 2014) (D. Mem. 28). The DOE's reliance on these cases is misplaced.

In *A.M.*, unlike in this case, the parent "concede[d] that she failed to include a challenge to the appropriateness of th[e] recommendation in her due process complaint." *A.M.*, 964 F.Supp.2d at 282. In *A.M.*, the parent could point to only "a single question from DOE counsel" on the contested issue from which the DOE neither "sought, let alone obtained, a strategic advantage." *Id*. at 283. As demonstrated in the Plaintiff's Memorandum and above, the DOE elicited testimony relevant to the IEP's assessment recommendations on direct examination of its witnesses and on cross-examination of Mr. R. (P. Mem. 17-19). The DOE also "sought ... a strategic advantage" from this testimony by arguing before the IHO and SRO that the assessment recommendations showed that the IEP provided L.R. with a FAPE (Exh. 18 at 5; Pet. ¶¶ 39-40).

In *Scott*, unlike in this case, the IHO did not reach the contested issue, and the SRO "properly declined to review" the issue which both parties agreed was not raised in the due process complaint. *Scott*, 6 F.Supp.3d at 6 438. Moreover, "the DOE only briefly addressed the issue in its redirect examination of its witness following Plaintiff's raising the issue on cross-examination." *Id.* at 439. Thus, Defendant's Memorandum offers no credible argument that the DOE did not open the door to the issue of the IEP's assessment recommendations.

**3)  The SRO Should Not Have Found That Considering the Appropriateness of the June 2011 IEP's Assessment Recommendations Was Beyond the Scope of the Impartial Hearing Absent an Argument From the DOE**

Regardless of whether the DOE was on notice or "opened the door" to the appropriateness of the June 2011 IEP's assessment recommendations, the SRO lacked any basis

to determine that the IHO's finding went beyond the scope of the hearing because the DOE made no such argument to the SRO (*see* P. Mem. 15-16, citing Pet. ¶¶ 39-40, 42-44).

In a footnote, Defendant's Memorandum asserts that because "the DOE clearly appealed" the merits of the IHO's finding regarding the June 2011 IEP's assessment recommendations, the SRO could find the issue to be waived (D. Mem. 25 n.9). However, that the DOE argued that the IHO rendered a substantively erroneous ruling on a relevant issue does not encompass an additional argument that the issue was beyond the scope of the hearing.

The DOE also asserts that claims that a hearing officer adjudicated issues that were beyond the scope of an impartial hearing cannot be waived, writing that "the Second Circuit has made clear that limiting the issues adjudicated to those raised in the due process complaint is a matter of jurisdiction, which is not waivable" (D. Mem. 25 n.9). The DOE is mistaken. In fact, the Second Circuit has not clearly ruled on this issue since the Supreme Court clarified in *Gonzalez v. Thaler*, 132 S.Ct. 641 (U.S. 2012), that a "rule is jurisdictional '[i]f the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional.' But if 'Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional.'" *Gonzalez*, 132 S.Ct. at 648 (internal citations omitted). The IDEA does not clearly indicate that its exhaustion requirement is jurisdictional.[2]

Notably, one of the district court cases that the DOE relies upon to support its position was subsequently appealed to the Second Circuit, where the parents argued that under the

---

[2] *See* 20 U.S.C. § 1415(l) ("Rule of construction. Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [...], title V of the Rehabilitation Act of 1973 [...], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.")

14

Supreme Court's holding in *Gonzalez*, the IDEA's exhaustion requirement was non-jurisdictional (D. Mem. 25 n.9). *See B.M. ex rel. E.M. v. New York City Dep't of Educ.*, 569 Fed.Appx. 57 (2d Cir. 2014) (summary order). The Circuit declined to rule on the issue. *Id.* at 58-59 ("We conclude, however, that the issue need not be decided here"). The Ninth Circuit is the circuit court to have most recently ruled on whether the IDEA's exhaustion requirement is jurisdictional. It came to the conclusion that "the exhaustion requirement in [20 U.S.C.] § 1415(l) is not jurisdictional." *Payne ex rel. D.P. v. Peninsula Sch. Dist.*, 653 F.3d 863, 870 (9th Cir. 2011).[3] *Payne* indicates that the DOE waived any claim that the IEP's assessment recommendations were beyond the scope of the hearing in failing to make this argument below. Nevertheless, this Court need not determine whether the IDEA's waiver rule is jurisdictional or non-jurisdictional because, as demonstrated in Plaintiff's Memorandum and above, the issue of the IEP's assessment recommendations was within the scope of the impartial hearing.

**B.  The DOE's Recommendation That L.R. Take the Regents and RCTs Demonstrates That It Failed to Consider L.R.'s Unique Needs and Provide Him With a FAPE**

The IHO determined that the June 2011 IEP's requirement for L.R. "to take both the Regents and RCT examinations was not appropriate and demonstrates a lack of understanding of [L.R.'s] individual needs" (FFD 10). As demonstrated in Plaintiff's Memorandum, the IEP's requirement that L.R. – who was turning age 21 and in his last year of eligibility under the IDEA – prepare and sit for five Regents and six RCTs that he had little hope of passing, supports the IHO's determination (P. Mem. 21-27). The DOE arguments otherwise are unavailing.

---

[3] The holding in *Payne* was subsequently limited by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014), in which the Ninth Circuit declined to extend the case's holding to the Prison Litigation Reform Act and overturned a portion of the decision that pertained to the proper procedural mechanism for putting forward lack of exhaustion claims.

Defendant's Memorandum does not directly defend the June 2011 IEP's illogical recommendation for L.R. to prepare, sit for, and almost certainly fail 11 day-long examinations (*see* D. Mem. 29-31). Rather, the DOE argues that "under the rule operating in New York, L.R. was not eligible for alternative assessments" (D. Mem. 30). However, as demonstrated in Plaintiff's Memorandum, the guidance from a component of the New York State government is contrary to the guidance from the U.S. Department of Education and contrary to the primary purpose of the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs" (P. Mem. 25-27). 20 U.S.C. § 1400(d)(1)(A); *see Bd. of Educ. v. Rowley*, 458 U.S. 176, 181 (1982) (noting that a school district's provision of a FAPE to a child be "tailored to the *unique* needs of the handicapped child by means of an '*individualized* educational program'") (emphasis added).

The DOE asserts that "neither the IHO nor the Plaintiff considered the emotional impact of a recommendation for alternative assessments" (D. Mem. 30). This assertion is mistaken. First, the DOE does not describe or define the nature of the "alternative assessments" that could have an "emotional impact" on L.R. (*see* D. Mem. 29-31). Second, the DOE's argument that L.R.'s positive self-image might have been damaged if he were not allowed to take the Regents and RCTs is belied by the record, which shows that L.R. developed his positive self-image while attending Cooke for the five school years prior to the school year at issue (Tr. 177-78), and where he only took a single RCT (Tr. 112-13). Indeed, the only evidence of an assessment emotionally impacting L.R. was the testimony from Cooke teacher Kate Hibbard that taking the RCT was "an incredibly stressful situation" for L.R. and "that he broke into a sweat while he was taking it" (Tr. 141). Thus, the DOE's argument is contradicted by the record.

16

Defendant's Memorandum asserts that the assessment modifications included in the IEP, such as "extended time with breaks" and "answers recorded in any manner" show that L.R.'s "individualized needs" were met (D. Mem. 30-31). The DOE is wrong as it fails to appreciate that assessment modifications such as "extended time with breaks" and "answers recorded in any manner" do not affect the content of the assessments. And it is the content of the Regents and RCTs, that were far above L.R.'s level, which made the recommendation that he be placed in classes geared toward taking these assessments inappropriate.

The DOE also notes that "Plaintiff does not cite a single case in which the IEP's assessment recommendation was found to deprive a student of a FAPE" (D. Mem. 31). However, that this case may involve a unique allegation of substantive error does not undermine the fact that the DOE crafted clearly inappropriate recommendations for L.R. The DOE asserts that there "is no evidence that taking the Regents and RCTs would cause L.R. to regress rather than make educational progress" (D. Mem. 31). However, the DOE offers no logical explanation for how requiring L.R. to prepare and sit for 11 days of examination that he had little hope of passing met his "unique needs" (D. Mem. 31). 20 U.S.C. § 1400(d)(1)(A). To pass even an RCT a student must be functioning at a sixth grade level (Tr. 86). Under the IEP's own terms, L.R. was only reading at a third grade level and performing math at a fourth grade level (Exh. 8 at 3). The IEP's assessment recommendations would have L.R. wasting segments of the school year.

Similarly, the DOE writes the administration of the Regents and RCTs "has little to do with whether a student receives a FAPE" (D. Mem. 31). However, beyond wasting specific school days, placing L.R. in classes geared toward taking these assessments would require providing instruction to L.R. at two to three grade levels above his ability. Contrary to the DOE's assertions, the June 2011 IEP's assessment recommendations are strongly tied to providing L.R.

17

with a FAPE. Thus, as the IHO correctly determined, "these tests are not appropriate for [L.R.] and this focus would not allow him to receive instruction at a level that he required" (FFD 11).

Moreover, Defendant's Memorandum points to no better reasoning contained in the SRO's contrary determination, which lacks a basis in the case record and the law (D. Mem. 29-31; *see* P. Mem. 25-27). Therefore, this Court should defer to the IHO's well-reasoned determination that the June 2011 IEP's recommendation that L.R. "take both the Regents and RCT examinations was not appropriate and demonstrates a lack of understanding of [L.R.'s] individual needs" (FFD 10). *M.H.*, 685 F.3d at 246 ("where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court … to consider the IHO's analysis, which is also informed by greater educational expertise than that of judges, rather than to rely exclusively on its own less informed educational judgment").

## POINT III: THE DOE'S 15:1 PROGRAM RECOMMENDATION WAS NOT APPROPRIATE FOR L.R.

Plaintiff's Memorandum demonstrated that the IHO correctly found that the DOE's 15:1 program recommendation was not appropriate for L.R. and that the DOE failed to present evidence indicating that L.R. could make meaningful progress in such a setting (P. Mem. 27-33). The SRO's conclusion otherwise was not well-reasoned and was based solely on "conclusory generalities and unsupported assertions" (P. Mem. 27-28, quoting *B.R. ex rel. K.O. v. New York City Dep't of Educ.*, 910 F.Supp.2d 670, 676 (S.D.N.Y. 2012)). Defendant's Memorandum first briefly attempts to defend the SRO's analysis of the DOE's 15:1 program recommendation (D. Mem. 14-16), and then offers new, alternative justifications for the SRO's determination (D. Mem. 16-20). Both of the DOE's attempts to support the SRO's decision are unavailing.

18

**A. The SRO's Determination That the DOE's 15:1 Program Recommendation Was Appropriate for L.R. Is Deficiently Reasoned**

Plaintiff's Memorandum demonstrated that in finding that L.R.'s placement in a 15:1 classroom was appropriate, the SRO simply recounted some of the June 2011 IEP's contents without explaining how the content supported the placement (P. Mem. 27-28). The SRO noted that the IEP described L.R.'s academic and social functioning, but failed to draw a nexus between L.R.'s functional levels and his ability to make progress in a 15:1 program (SRO Dec. 15). The SRO noted that the IEP listed management needs for L.R., such as "small group instruction" and "direct teacher modeling and prompts" (SRO Dec. 15). However, the SRO failed to explain how L.R. would receive sufficient small group instruction and direct teacher modeling in a classroom with one teacher for 15 students (SRO Dec. 15). *Cf. C.L. v. New York City Dep't of Educ.*, No. 12-CV-1676, 2013 WL 93361, at *7 (S.D.N.Y. Jan. 3, 2013) (finding the basis of an SRO's determination that a 6:1:1 class was appropriate for a child to be "unclear" where "[t]he SRO's Decision on this issue merely states the issue, states the conclusion, summarizes the CSE meetings and the IEP [...] At no point does the SRO actually analyze the evidence or explain the reasons for its determination").

Defendant's Memorandum offers little to counter Plaintiff's arguments. Hamstrung by the SRO's lack of analysis, the DOE asserts that the "SRO's consideration of the IEP as a whole ... illustrates her sound reasoning" (D. Mem. 15). However, the DOE offers no particulars on how considering "the IEP as a whole" supports the SRO's determination that a 15:1 program was appropriate for L.R. (*see* D. Mem. at 15-16). The DOE recounts the IEP's description of L.R.'s academic and social functioning and management needs. However, like the SRO, the DOE is unable to explain how the IEP's description of L.R.'s functioning and its list of management needs supports placing him in a 15:1 classroom (*see* D. Mem. 15-16).

19

Furthermore, the DOE exaggerates the basis of the SRO's determination, writing that the SRO considered the "evaluative materials" in the record (D. Mem. 15). The SRO summarized some of the contents of the November 2009 psychoeducational evaluation, the December 2009 social history report, and the December 2010 classroom observation in the section of the decision discussing the DOE's failure to fully assess L.R. (SRO Dec. 11-14). However, the SRO's assessment of the DOE's 15:1 program recommendation does not cite these evaluative materials (*see* SRO Dec. 15-16). Nor does the SRO explain how the information contained in the psychoeducational evaluation, the social history report, or the classroom observation supported placing L.R. in a 15:1 classroom (*see* SRO Dec. 11-16). Indeed, as demonstrated in Plaintiff's Memorandum, the information contained in these documents indicates that L.R. would not have been able to make progress in a 15:1 classroom (P. Mem. 28-29).

Similarly, citing only to the IEP itself, Defendant's Memorandum states that "based on input from L.R.'s progress report, the IEP recommended a program ratio of 15 students to one teacher" (D. Mem. 12, citing Exh. 8 at 1). Yet the DOE does not explain how "input from L.R.'s progress report" supported placing him in a 15:1 classroom. In fact, as demonstrated in Plaintiff's Memorandum, the Spring 2011 Cooke progress report offers no support for placing L.R. in a 15:1 program (P. Mem. 29). Defendant's Memorandum states that the IEP's related services recommendations "provided him four and a half hours per week of additional individual and small group support" (D. Mem. 13). However, the DOE does not explain how receiving counseling and therapy in small group and one-on-one settings would allow L.R. to make academic progress in a 15:1 classroom (D. Mem. at 13).

Although the SRO did not assert that the IHO applied an improper legal standard in assessing the DOE's 15:1 program recommendation (*see* SRO Dec. 15-16), the DOE

nevertheless argues that the SRO's determination is correct because "the IHO did not use the proper standard in finding the program inappropriate because she based her conclusions on a purported lack of evidence that '[L.R.] was ready to learn in a larger environment' than the program he had been attending at Cooke" (D. Mem. 16). The DOE is mistaken. Under New York State law, the DOE bore the burden of proving that its recommendations were appropriate for L.R. N.Y. Educ. L. § 4404(1)(c). The DOE failed to present any evidence that L.R. could make progress in a 15:1 classroom. In writing that there was no evidence in the record indicating "why the [IEP] team felt [L.R.] was ready to learn in a larger environment," the IHO was correctly stating that the DOE had failed to meet its burden (FFD 10).

Moreover, unlike the IHO, the SRO failed to hold the DOE to this burden. Indeed, not only is the record devoid of any documentary evidence to support L.R.'s placement in a 15:1 classroom, but the record does not contain any testimony that a 15:1 program was appropriate for him. The SRO's decision notes that DOE district representative Ms. Giurato "believed that the student would benefit most from a 'self-contained class with 15 students and a teacher' at a community school" as opposed to another DOE program (SRO Dec. 16, citing Tr. 74). However, not even Ms. Giurato offered an opinion that L.R.'s placement in a 15:1 classroom was actually "tailored to meet [his] unique needs" or would put him in a position where he was "likely to make progress" (*see* Tr. 59-92). *Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119, 122, 130 (2d Cir. 1998). The record is devoid of any evidence or opinion that supports the DOE's recommended 15:1 program. Plaintiff's Memorandum cited to *C.F.* and *S.B. v. New York City Department of Education*, No. 14-CV-0349, 2015 WL 3919116 (S.D.N.Y. June 25, 2015), which both held that the SRO erred in relying solely on a DOE representative's opinion that a classroom ratio was appropriate for a child where: 1) the DOE representative did not know the

21

child, and 2) the representative's opinion conflicted with opinions from educators who actually knew and worked with the child (P. Mem. 30). The facts in this case are even stronger than those presented in *C.F.* and *S.B.* as this case record does not even contain a single opinion stating that L.R. would be able to make meaningful progress in a 15:1 classroom.

**B.   The DOE's Alternative Justifications for the SRO's Determination are Unavailing**

In a section titled, "Independent of deference to the SRO decision, the record objectively supports the appropriateness of the 15:1 recommendation," the DOE offers a series of alternative justifications for the SRO's determination that a 15:1 program was appropriate for L.R. (D. Mem. 16-20). However, the DOE's attempt to rescue the SRO's decision with substitute reasoning is unavailing.

Plaintiff's Memorandum demonstrated that the primary justification the DOE presented for its 15:1 program recommendation was Ms. Giurato's testimony that a 15:1 program was the best program for L.R. on the DOE's "continuum of services" (P. Mem. 31-32). In response, the DOE asserts that a school district "is not required to develop a specially-sized class to suit each student's individual needs" (D. Mem. 17). However, Plaintiff's Memorandum does not argue that the DOE was required to provide L.R. with a "specially-sized class." Rather, the DOE was required to provide some evidence that L.R. would make meaningful progress in a 15:1 classroom. The DOE did not do so. Ms. Giurato's testimony that a 15:1 program was the best program that the DOE had to offer does not constitute evidence that L.R. could actually make progress in the program (P. Mem. 31-32).

The DOE asserts that the 15:1 "program was properly chosen as the least restrictive of the options worthy of consideration for L.R. by exposing him to typically developing peers in a community school rather than restricting him to a 12:1:1 class in a specialized school" (D. Mem.

13). However, any concerns about placing L.R. in the "least restrictive environment" are not a justification for placing him in a 15:1 classroom absent any evidence that he could actually make progress in such a setting. *See T.M.*, 752 F.3d at 162 ("Although the IDEA strongly prefers placing children in their least restrictive environment, 'the presumption in favor of mainstreaming must be weighed against the importance of providing an appropriate education to handicapped students'") (internal citations omitted).

The DOE also argues that L.R. was "too independent for the smaller, more intensive 12:1:1 program" pointing to testimony indicating that during the 2011-2012 school year L.R. did not think of himself as learning disabled and that he matured (D. Mem. 19, citing Tr. 132-33, 188). However, contrary to the DOE's apparent assumption, there is little connection between L.R.'s self-image or his general growth in maturity and his ability to learn in a 15:1 classroom. Additionally, the evidence of L.R.'s self-image and growth in maturity during the 2011-2012 school year is retrospective and cannot be used to justify the June 2011 IEP's recommendations. *See R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 186 (2d Cir. 2012) ("the IEP must be evaluated prospectively as of the time of its drafting and therefore [...] retrospective testimony [...] may not be considered").

Defendant's Memorandum asserts that Mr. R.'s objection to the 15:1 program recommendation "is either an impermissibly speculative claim about how Clara Barton would implement the IEP or a false allegation about the impossibility of providing the listed supports in a 15:1 program" (D. Mem. 18). This assertion is inaccurate. Mr. R. objected to L.R.'s placement in a 15:1 classroom when it was initially recommended at the June 2011 CSE meeting, and prior to L.R.'s placement at Clara Barton (Exh. 9 at 2; Exh. 14; Tr. 114, 180-81). Therefore, this objection is not a "speculative claim" about how the IEP would be implemented at Clara Barton

23

(D. Mem. 18). And Mr. R.'s objection that L.R. would not receive an appropriate amount of support in a 15:1 classroom is not an allegation "about the impossibility of providing the listed supports in a 15:1 program" (D. Mem. 18; *see* P. Mem. 28-31). Management needs such as "small group instruction" or "direct teacher modeling/prompts" are not inelastic concepts as the DOE appears to believe. The dispute at the June 2011 CSE meeting, at the hearing, and before this Court, is not whether L.R. required the management needs listed in the IEP, but whether at 15:1 program would have provided him with enough small group instruction or direct teacher modeling/prompts to allow him to make meaningful progress (Exh. 1; Exh. 8 at 3; Exh. 9 at 2; Exh. F at 2-4; Tr. 114, 180-81). As demonstrated in Plaintiff's Memorandum and above (*see* P. Mem. 27-33), the IHO correctly determined that there was no evidence that L.R. would receive enough support – that is enough small group instruction and enough direct teacher modeling/prompts – in a classroom with a 15:1 staffing ratio (FFD 10).

The DOE also argues that Mr. R.'s objection to the 15:1 program "was not based on evidence that the program was inappropriate" (D. Mem. 19). This argument is mistaken. First, the DOE's argument errantly assumes that it was Mr. R.'s burden to demonstrate at the hearing that a 15:1 program was inappropriate for L.R. N.Y. Educ. L. § 4404(1)(c). Second, regardless of which party had the burden of proof at *Burlington* Prong I, as demonstrated in Plaintiff's Memorandum, all of the evaluative information, school reports, and information from educators who actually knew and worked with L.R. indicates that he needed more support than could be provided in a class with one teacher for 15 students (*see* P. Mem. 29-31).

## POINT IV: COOKE WAS AN APPROPRIATE PLACEMENT FOR L.R. AND THE EQUITIES FAVOR DIRECT TUITION PAYMENT

The DOE offers no rebuttal to the arguments in Plaintiff's Memorandum that Cooke was an appropriate placement for L.R. and that the equities of the case favor direct tuition payment

(D. Mem. at 9-31; *see* P. Mem. at 33-35). As set forth in Plaintiff's Memorandum, the IHO's unappealed *Burlington* Prong II determination is final and binding on the parties (P. Mem. 33). With regard to *Burlington* Prong III, the record establishes that Mr. R. cooperated with the DOE and did not impede the DOE's ability to offer L.R. a FAPE (P. Mem. 33-35). An award of direct tuition payment is appropriate (P. Mem. 35). Therefore, Mr. R. asks that this Court enter findings in his favor on *Burlington* Prongs II and III and order the DOE to pay L.R.'s 2011-2012 school year tuition directly to Cooke.

## CONCLUSION

As set forth above, and in Plaintiff's Memorandum, the IHO correctly weighed all of the evidence in the record against the issues contested at the hearing and properly conclude that the DOE failed to provide L.R. with a FAPE for the 2011-2012 school year. The SRO's contrary determinations are unsupported. Therefore, Mr. R. respectfully requests that the Court overturn the SRO's decision and reinstate the IHO's award ordering the DOE to fund L.R.'s $48,500.00 tuition at Cooke for the 2011-2012 school year.

Dated:  New York, New York
        August 14, 2015

                                     /s/ Thomas Gray
                                     THOMAS GRAY
                                     PARTNERSHIP FOR CHILDREN'S RIGHTS
                                     Attorney for Plaintiff
                                     271 Madison Avenue, 17th Floor
                                     New York, NY 10016
                                     (212) 683-7999 ext. 246
                                     Fax: (212) 683-5544
                                     tgray@pfcr.org